United States District Court
Southern District of Texas
**ENTERED**
January 05, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TAAMITI SAMBA OLIVER, (TDCJ # 2206653) | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CIVIL ACTION NO. H-20-2660 |
| SHANAY R. SIMS, *et al.*, | § § § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Taamiti Samba Oliver (TDCJ #2206653), filed a Prisoner's Civil Rights Complaint under 42 U.S.C. § 1983, against several correctional officers employed by the Texas Department of Criminal Justice—Correctional Institutions Division (TDCJ). (Dkt. 1). The defendants responded with a motion for summary judgment as to some of Oliver's claims, which the Court granted. (Dkt. 42). On September 23, 2022, the defendants filed a supplemental motion for summary judgment as to the remaining claims. (Dkt. 46). Oliver filed a timely response. (Dkt. 55). Having reviewed the motion, the response, and all matters of record, the Court grants summary judgment in favor of the defendants and dismisses this action for the reasons explained below.

## I. BACKGROUND

The facts of this case are largely undisputed. In July 2018, Oliver was incarcerated at TDCJ's Garza Unit. (Dkt. 1, p. 4). He alleges that he was assigned to a lower bunk on the first floor at the Garza Unit because he suffers from seizures. (Dkt. 9, p. 1). In late July 2018, Oliver broke his foot. (Dkts. 1, p. 4; 36-2, p. 11-15). Medical personnel at the Garza Unit placed his foot in a cast, issued him crutches, and scheduled him for surgery at UTMB Hospital Galveston on August 2, 2018. (*Id.*). Oliver's medical records show that medical officials imposed a cell restriction for a lower bunk at that time. (Dkt. 36-5, p. 104). No restrictions were entered for a first-floor row assignment. (*Id.*).

While being transferred to Hospital Galveston on August 1, 2018, Oliver stayed overnight at the Darrington Unit. (Dkt. 1, p. 4). When he arrived, he was assigned to an upper bunk on the second floor for the night. (Dkts. 1, p. 4; 9, p. 2). Oliver initially spoke with Corrections Officer Justin Opara, pointing out that he had a broken foot and was on crutches and saying that he was afraid to navigate the stairs in that condition. (*Id.*). Opara made a "flash call," and four other officers—Sergeant Shanay Sims, Lieutenant Danielle Wilcox, Sergeant Annie Reynolds, and Lieutenant Reneka Danzy—responded. (*Id.*). Oliver again pointed out that he was in a cast and on crutches, and he asserted that it was unsafe for him to try to navigate

2

the stairs. (Dkts. 1, p. 5; 9, p. 2).

In response to Oliver's concerns, one of the officers called the classification officer, who responded that Oliver had no restrictions on climbing stairs and no restriction for a lower-floor cell assignment. (Dkt. 1, p. 5). Based on this, the officers on the scene told Oliver he needed to go to his assigned cell. Oliver protested again that it was unsafe for him to try to navigate the stairs, and he asked to be escorted to medical so that he could obtain a temporary pass for a first-floor, bottom-bunk cell assignment. (*Id.*). The officers refused to escort Oliver to medical and instead told him that he needed to go to the second-floor cell or face discipline. (*Id.*). Oliver alleges that the officers also threatened to spray him with mace if he did not comply. (Dkts. 1, p. 5; 9, p. 4). Oliver complied with the order and was able to go up the stairs without incident. (*Id.*). However, the next morning as Oliver was being escorted down the stairs to go to the hospital, one of his crutches caught on the stair rail and he fell. (Dkt. 1, p. 5). He sustained multiple injuries and was transported to the local emergency room. (Dkts. 1, p. 5; 36-2, pp. 21-89; 36-4, pp. 19-23). While X-rays in the ER did not reveal any broken bones, further evaluation of Oliver's left wrist by a hand specialist identified a ligament injury sustained in the fall that ultimately required surgery. (Dkt. 36-2, pp. 112).

In his § 1983 complaint, Oliver sues Opara, Sims, Wilcox, Reynolds, and

Danzy, alleging that they were deliberately indifferent to the serious risks to his safety when they required him to navigate the stairs while on crutches. (Dkt. 1, pp. 3, 6). He contends that the risk to his safety was obvious and could have been avoided by escorting him to medical so that he could obtain a temporary restriction for a lower-floor cell. (*Id.*). Oliver seeks both injunctive and monetary relief against the defendants in both their official and individual capacities. (*Id.*).

The defendants initially responded to Oliver's complaint with a motion for partial summary judgment, contending that they were entitled to summary judgment on Oliver's claims against them in their official capacities and his claims for injunctive relief. (Dkt. 36). The Court granted this motion, (Dkt. 42), leaving the damages claims against the defendants in their individual capacities pending.

The defendants then filed a supplemental motion for summary judgment, contending that they are entitled to summary judgment in their favor on these remaining claims on the basis of qualified immunity. (Dkt. 46). The defendants allege that when Oliver refused to go to his assigned cell, they called Unit Classification, who informed them that Olivier did not have either a climbing restriction or a medical restriction for a first-floor cell. (*Id.* at 3). The defendants admit that Oliver asked to be escorted to medical for a temporary pass, but they declined to permit him to do so because the unit was in the middle of the count at

the time. (*Id.*). They assert that their actions, when considered in their totality, were objectively reasonable, thus entitling them to qualified immunity. (*Id.* at 9).

Oliver filed a timely response to the defendants' motion. (Dkt. 55). He does not dispute the facts themselves. Instead, he argues that the defendants could clearly see that he was on crutches with his foot in a cast and that the risk that he could be seriously injured if forced to navigate stairs was open and obvious. (*Id.* at 3). He contends that their refusal to escort him to medical was objectively unreasonable and constituted deliberate indifference.

## II. LEGAL STANDARDS

### A. Actions Under 42 U.S.C. § 1983

Oliver filed his complaint against the defendants under 42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but instead was designed to provide a remedy for violations of statutory and constitutional rights." *Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 759 (5th Cir. 1997) (per curiam). To state a valid claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). When the undisputed facts do not show a violation of a constitutional right, the defendant is entitled to summary judgment in his favor.

*See, e.g., Williams v. Bramer,* 180 F.3d 699, 705 (5th Cir. 1999) (affirming summary judgment in favor of defendant when the undisputed facts did not amount to a constitutional violation).

### B. Summary Judgment

The defendants responded to Oliver's allegations with a motion for summary judgment. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (cleaned up). "The burden then shifts to the nonmovant to show the existence of a genuine fact issue for trial; however, the nonmovant may not rest upon allegations in the pleadings to make such a showing." *Id.* (cleaned up). Instead, the nonmoving party must point to record evidence that supports a conclusion that genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### C. *Pro Se* Pleadings

The court is mindful that Oliver is proceeding *pro se*. Federal courts do not hold *pro se* pleadings "to the same stringent and rigorous standards as . . . pleadings filed by lawyers." *Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) (per

6

curiam); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Instead, pleadings filed by a *pro se* litigant "are entitled to the benefit of liberal construction." *Hernandez*, 630 F.3d at 426. But even under a liberal construction, "*[p]ro se* litigants must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, serve defendants, obey discovery orders, present summary judgment evidence, file a notice of appeal, and brief arguments on appeal." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) (cleaned up).

### III. DISCUSSION

#### A. Deliberate Indifference

Oliver alleges that each of the defendants acted with deliberate indifference to his safety and to the serious risks of injury that he faced if he was forced to navigate stairs while on crutches with a broken foot. To prevail on a deliberate-indifference claim based on the conditions of confinement, a prisoner must prove that prison officials knew the prisoner faced a substantial risk of serious harm and that they disregarded that risk by failing to take reasonable measures to alleviate it. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Burleson v. Texas Dep't of Crim. Just.*, 393 F.3d 577, 589 (5th Cir. 2004). But the deliberate-indifference standard is "extremely high." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). A failure to act "unaccompanied by knowledge of a significant risk of harm"

is insufficient to establish a constitutional violation. *Farmer*, 511 U.S. at 837-38. It is also not enough to identify a significant risk that the official "should have perceived but did not." *Id.* at 838. In addition, "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective or negligent" do not amount to deliberate indifference. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998). Instead, "[t]he crucial question in determining an Eighth Amendment claim based on the conditions of confinement 'is whether the prison official, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health.'" *Burleson*, 393 F.3d at 589 (quoting *Farmer*, 511 U.S. at 843).

The undisputed evidence before the Court does not show that the defendants were deliberately indifferent to a substantial risk of serious damage to Oliver's future health. When Opara tried to escort Oliver to his assigned cell, Oliver pointed out his broken foot and crutches and questioned the assignment. Far from ignoring Oliver's concerns, Opara called for superior officers to come to the scene. When those officers arrived, they called the classification officer, who advised them that Oliver's records did not include either a climbing restriction or a first-floor restriction. Only after confirming that Oliver's cell assignment was proper did the officers insist that Oliver go to the assigned cell.

These facts show that rather than ignoring Oliver's concerns, the defendants attempted to determine whether his cell assignment was proper. Once they learned that the cell assignment was proper, they ordered Oliver to go to the assigned cell. Although the defendants may have been aware that Oliver might have difficulty using the stairs, they were justified in trusting that the medical professionals who had previously treated Oliver's broken foot would have recommended a first-floor cell assignment and restricted climbing if it was necessary. *See, e.g., Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163, 170-71 (3d Cir. 2015) (finding no deliberate indifference when non-medical prison officials refused to reassign Matthews to a bottom bunk despite his cast and crutches because they were entitled to rely on the medical personnel treating Matthews to impose any necessary restrictions). The defendants' decision to require Oliver to go to his properly assigned cell did not constitute deliberate indifference.

Oliver asserts that even if the cell assignment was proper, the defendants' refusal to escort him to the medical clinic to seek a temporary pass for an assignment to a first-floor cell constituted deliberate indifference. The defendants contend, and Oliver does not dispute, that they refused this request because honoring it would "disrupt the count." (Dkt. 1, p. 5). While this response may have seemed harsh in hindsight, it does not rise to the level of deliberate indifference. Oliver was not

9

seeking medical treatment at that time. Instead, he was seeking a housing accommodation that the medical providers at the Garza Unit had previously determined was not necessary. Oliver has not established that the defendants' refusal to escort him to medical during the inmate count for the sole purpose of trying to obtain a temporary change in his cell assignment restrictions was a reasonable measure that would have alleviated the risks he faced, in part because there is no evidence that medical personnel would have authorized such a change. This decision, while perhaps negligent, does not rise to the level of deliberate indifference.

In short, the record evidence does not establish that the defendants refused to treat Oliver, ignored his complaints, or refused to take reasonable measures to alleviate the risk he faced. The defendants' decision to abide by the medical restrictions in place and their refusal to allow Oliver to seek changes to those restrictions does not constitute deliberate indifference. Having failed to establish that the defendants violated his constitutional rights, Oliver has not established that he is entitled to relief under § 1983. The defendants are entitled to summary judgment in their favor on Oliver's claims.

**B.     Qualified immunity**

The defendants alternatively argue that they are immune from suit under the doctrine of qualified immunity. Qualified immunity shields public officials acting within the scope of their authority from claims for monetary damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016) (cleaned up); *see also Salas v. Carpenter*, 980 F.2d 299, 304 (5th Cir. 1992) ("In cases where the nonmoving party bears the burden of proof on a dispositive issue, a summary judgment motion may rely solely on the pleadings."). To rebut the defense, the plaintiff must show both "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 563 U.S. at 735 (quoting *Harlow*, 457 U.S. at 818); *see also*

11

*King*, 821 F.3d at 654 ("The plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." (quoting *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 419 (5th Cir. 2008))). While the Court must view the summary-judgment evidence in the light most favorable to the plaintiff, s*ee Tolan v. Cotton*, 572 U.S. 650, 657 (2014); *Bourne v. Gunnels*, 921 F.3d 484, 492 (5th Cir. 2019); and draw all inferences in the plaintiff's favor, "[t]he plaintiff bears the burden of negating qualified immunity." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). To do so, "the plaintiff need not present 'absolute proof,' but must offer more than 'mere allegations.'" *King*, 821 F.3d at 654 (quoting *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)).

In this case, the summary-judgment evidence, taken in the light most favorable to Oliver, does not establish either element necessary to defeat the qualified immunity defense. As discussed above, the evidence fails to show that the defendants violated Oliver's constitutional rights. Moreover, the law is not "clearly established" that "the use of stairs by an inmate on crutches is inherently risky to the point of stating a constitutional claim." *Johnson v. Kempt*, Civil Action No. 6:21cv426, 2022 WL 983674, at *3 (E.D. Tex. Feb. 14, 2022), *report and*

*recommendation adopted,* No. 6:21-cv-00426, 2022 WL 965403 (E.D. Tex. Mar. 30, 2022).

The law is considered "clearly established" "when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *al-Kidd,* 563 U.S. at 741 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). The courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

Here, however, existing precedent does not place the constitutional question beyond debate. Some courts have found the use of stairs by an inmate on crutches is sufficiently risky to give rise to a constitutional question, while others have disagreed. *Compare Bell v. Herod,* 368 F. App'x 564, 566 (5th Cir. 2010) (affirming jury verdict in favor of officers who enforced a prisoner amputee's move to a third-floor cell by requiring him to use the stairs), *Matthews,* 613 F. App'x at 170-71 ("Although corrections officers were aware of Matthews's difficulty descending from his top bunk, using the stairs, and moving about on crutches, they were also justified in trusting that the medical professionals who regularly treated Matthews would recommend a bunk or cell reassignment if he needed one."), *and Thomas v. Flanagan,* No. 2:05-CV-0112, 2005 WL 2977578, at **1–2 (N.D. Tex. Nov. 7,

2005) (inmate's allegations that the defendant required the plaintiff to take the stairs "despite the fact that plaintiff had just been diagnosed with an injured ankle, issued crutches, and given restrictions against climbing, requiring that he be assigned to a bottom bunk in a cell on the bottom floor" supported a claim of negligence "at best," rather than a constitutional violation), *with Wilson v. Weisner*, 43 F. App'x 982, 984 (7th Cir. 2002) (finding discovery warranted on whether prison stairs were "objectively dangerous to a person on crutches").

Because the evidence does not show that the defendants violated Oliver's constitutional rights and because the law surrounding that right is not "clearly established," the defendants are entitled to summary judgment in their favor on the basis of qualified immunity.

## IV. CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1. The defendants' supplemental motion for summary judgment, (Dkt. 46), is **GRANTED**.

2. Oliver's "Motion to Dismiss Defendants' Summary Judgment," (Dkt. 55), is **DENIED**.

3. The pretrial conference scheduled for Tuesday, January 10, 2023, (Dkt. 56), and all other deadlines in the Court's scheduling order, (Dkt. 43), are

**CANCELLED**.

4. This action is dismissed with prejudice.

The Clerk will provide a copy of this Order to the parties.

SIGNED at Houston, Texas, on _____Jan 5_____, 2023.

_____
DAVID HITTNER
UNITED STATES DISTRICT JUDGE